

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 2, 2020

**BY EMAIL**

The Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   **United States v. Angel Crispin,**
          **19 Cr. 323 (JSR)**
          **20 Cr. 022 (JSR)**

Dear Judge Rakoff:

      The Government respectfully submits this response to the post-plea bail application of defendant Angel Crispin, a/k/a "a/k/a "Secreto" ("Mot."). On February 21, 2020, Crispin appeared before this Court and pled guilty to Hobbs Act robbery conspiracy and RICO conspiracy arising out of his leadership of the Sunset chapter of the Trinitarios. Crispin is an admitted leader of that violent gang who, by his own admission, personally participated in and ordered serious acts of violence, including an attempted murder. The significant danger that his release poses to the public is apparent. The Government is, however, cognizant of the fact that Crispin suffers from cystic fibrosis, an ailment that elevates the danger of COVID-19 for him beyond that faced by other inmates. In balancing the danger that Crispin poses to the public against the danger to him of continued detention, the Government believes there is a very narrow set of conditions under which release would be appropriate, to include (1) home incarceration at a fixed address (meaning complete lockdown at that address—no leaving the address for any reason without prior permission from the Government and Pretrial Services), and (2) GPS monitoring, amongst other conditions discussed herein. The Government has conferred with defense counsel, and they are willing to consent to all of these conditions. However, as of the writing of this letter, the defense has not been able to identify a fixed address where Crispin can live if released. The defense proposes, in the alternative, that the Court release Crispin to the shelter system, without a fixed address. (Mot. 8-9.) For reasons of public safety, the Government opposes this request in the strongest possible terms. Because the parties' disagreement is currently limited to this issue, it is the focus of this letter.[1] For the reasons detailed herein, the Court should order Crispin detained unless and until each of the Government's proposed conditions can be met.

---

[1] This tailored approach should not be taken as a concession on any point raised in Crispin's motion, particularly the defense's sweeping characterizations about the conditions at the MDC and the MCC.

I. **Background**

On April 19, 2019, Crispin was arrested and charged by complaint for his participation in an attempted armed robbery of narcotics. Over the course of numerous meetings recorded by confidential sources, Crispin actively participated in the planning of the robbery, including insisting that guns would be necessary and indicating that he had the capacity to supply them. For example, in one meeting, Crispin said, in substance and in part, that he would shoot the robbery victims if any of them resisted. In another meeting, he indicated that the use of at least two guns was required for the robbery. In a later meeting, Crispin again asked whether the victims would be armed, to which a confidential source replied that they would. Crispin then made a phone call to an unknown male and told the unknown male that Crispin would come by later to pick-up a gun. Ultimately, Crispin and six other individuals were arrested on the verge of carrying out the planned robbery. One individual was wearing a bullet proof vest, and two individuals were carrying loaded firearms. Indictment number 19 Cr. 323 charging Crispin with Hobbs Act robbery conspiracy, narcotics conspiracy, and unlawful firearms possession was returned on May 1, 2019.

On August 7, 2019, Crispin appeared before this Court for an initial pre-trial bail determination. The defense proposed a $150,000 bond and home detention with GPS. (8/7/19 Tr. 20:16-23.) The Court ordered Crispin detained on dangerousness grounds, specifically finding that even home detention would not sufficiently protect the public. (*Id.* 29:4-17.)

On January 14, 2020, indictment number 20 Cr. 022 charging Crispin and six other defendants with RICO conspiracy was unsealed. The charges stemmed from Crispin's membership in, and leadership of, a violent chapter of the Trinitarios, known as Sunset.

The Trinitarios is a gang based primarily in New York, although it now has offshoots in other states. Within the Trinitarios are various chapters or sets, each of which has to be approved by the Trinitario leadership. Sunset is one such Trinitario chapter, named for its founding location: Sunset Park, in Brooklyn. Sunset controls territory in the Bronx, Manhattan, and Brooklyn.

As a Trinitario set, Sunset has rivalries with other gangs, including Dominicans Don't Play ("DDP"), the Latin Kings, and the Crips. However, Sunset also has intra-Trinitario rivalries with other chapters.

Joining Sunset requires a six-month "probatorio"/"observation" period. Potential members have to report to meetings and, if directed, to engage in fights with rival gangs. Persons who successfully complete those six months are then designated "Baby Trinis." Only if they show a willingness to die and to kill for the gang can then be "baptized" and recognized as a full Trinitario and Sunset member. These members then hold the position of soldier. Soldiers are required to memorize a set of rules when they join. They must report to regular meetings, where they are required to pay dues. More generally, failure to follow the rules results in punishment, including violent punishment. For example, if a member does not pay his dues, he gets a "violation," which means being hit three times in the ribs and paying double his dues at the next meeting. Other discipline includes a "physical," which means 27 punches to the ribs. As a general rule, members must follow leaders' orders, otherwise they get a "physical." Typical orders include reporting for "missions"—armed hunts for rival gang members or individuals.

Like the Trinitarios more generally, Sunset has a structured hierarchy. From at least 2010 through the present, co-defendant Ediberto Santana, a/k/a "Flaco Veneno," has been "La Suprema," the highest ranking leader of Sunset. Reporting to him are "La Primera" (the first), "La Segunda" (the second), and "La Tercerda" (the third).

Crispin has been a Sunset member since at least 2010. In or about 2017, he was elevated to La Primera of Sunset in the Bronx—the highest ranking leader for that geographic sub-set of the gang. Crispin has engaged in and ordered various acts of violence as a member and then leader of Sunset, including assaults, slashings, shootings, and attempted murder. For example:

- In or about February 2013, Crispin and other Sunset members assaulted a perceived member of the Latin Kings in Queens using a cane. Crispin pled guilty to second degree assault and was sentenced to three years' imprisonment.

- In or about October 2013, Crispin participated in a retaliatory slashing. The victim was cut across the neck with a knife. Crispin pled guilty to attempted first degree assault and was sentenced to five years' imprisonment. He was paroled on December 28, 2017 with a parole term set to run through December 28, 2022.

- In or about October 2018, Crispin ordered a retaliatory shooting of a member of the Crips. As a result of Crispin's order, a Sunset member was sent to do the shooting and shot the victim in the leg on a busy street in the Bronx. The victim went to the hospital but luckily survived.

In connection with his Sunset membership, Crispin has also participated in the planning and execution of various robberies, including the 2019 robbery conspiracy for which Crispin was arrested and charged in April 2019.

On February 21, 2020, Crispin appeared before this Court to enter a plea in both 19 Cr. 323 and 20 Cr. 022. In particular, Crispin pled guilty to Hobbs Act robbery conspiracy, as charged in Count One of S1 19 Cr. 323, and RICO conspiracy, as charged in Count One of 20 Cr. 022. During his allocution, Crispin admitted that he was a leader in Sunset and that in 2018 he approved the attempted murder of a rival gang member.[2] (2/21/20 Tr. 15:21—17:1.) At sentencing, Crispin faces a Guidelines range of 188 to 235 months' imprisonment.

## II. Applicable Law

Because Crispin has pleaded guilty and awaits sentencing, § 3143(a) applies. Pursuant to § 3143(a)(1), a defendant awaiting sentencing "shall" be detained "unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. 3143(a)(1). This statute thus "establishes a presumption in favor of detention" that the "defendant must rebut . . . with clear and convincing evidence." *United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004).

---

[2] The same is stipulated to in the parties' plea agreement.

Because Crispin is detained pursuant to § 3143(a)(1), § 3142(i) is inapplicable here. By its plain terms, § 3142(i) applies only to a detention order issued under § 3142(e). *See* 18 U.S.C. § 3142(i) (applicable to "a detention order issued under subsection (e) of this section"). *Cf. United States v. Chavis*, 19 Cr. 620 (DLC), ECF No. 20 (holding that, post-plea, § 3143(a) applies, not § 3142(g)); *United States v. Fofana*, 19 Cr. 447 (DLC), ECF. No. 66 (holding that, post-plea, § 3143(a) applies, not § 3142(f)). Because Crispin has already pleaded guilty, he is detained pursuant to § 3143(a), not § 3142(e).[3]

## III. Discussion

Crispin is an admitted gang leader who has both engaged in and ordered significant acts of violence, including an attempted murder. He became La Primera of Sunset in the Bronx and committed the offenses of conviction, including ordering the 2018 attempted murder and participating in the 2019 planning of an armed narcotics robbery, while on state parole for a violent, gang-related assault. Moreover, as a result of his gang affiliation, he could gain access to firearms even if released subject to home detention—a fact the Court itself noted at Crispin's initial bail hearing. (8/27/19 Tr. 29:14-16.) To state the obvious, under these facts, it is difficult to conceive of a set of conditions that would satisfy Crispin's burden to demonstrate by clear and convincing evidence that he does not pose a danger to the community if released.

While the Government acknowledges the risk that incarceration during the current health situation poses to Crispin because of his cystic fibrosis, his health is only one part of the analysis. As judges in this district have repeatedly held in the last week, a defendant's particular health concerns must be weighed against the danger to the public posed by his release. Thus, in *United States v. Espinal*, 17 Cr. 791 (LAK) (March 31, 2020), the court denied bail to a defendant who had pled guilty to conspiracy to distribute heroin and conspiracy to commit murder in relation to a drug-trafficking crime, despite the fact that the defendant suffered from asthma. Indeed, even in the pre-plea context—where, unlike here, the defendants have not admitted their guilt—judges have denied bail to persons with unique health concerns when releasing them would pose too great a threat to public safety. *See, e.g.*, *United States v. Valdez*, 19 Cr. 883 (JPO) (March 27, 2020) (denying bail to defendant with severe asthma based on dangerousness in sex trafficking and kidnapping case); *United States v. Conley*, 19 Cr. 131 (PAE) (March 31, 2020) (denying bail to defendant on MCC "high risk" list based on dangerousness in sex trafficking and witness tampering case); *United States v. Chambers*, 20 Cr. 135 (JMF) (March 31, 2020) (denying bail to defendant with severe asthma based on dangerousness in RICO case involving robberies and slashing of an inmate). The instant case is therefore easily distinguished from the cases in this district cited by the defense, in which non-violent defendants were released to shelters with the Government's consent. *United States v. Hernandez*, 19 Cr. 169 (VM) (Mar. 28, 2020) (defendant charged with narcotics conspiracy, not violent crime, released on consent); *United States v. Almaleh, et al.*, 17 Cr. 25 (ER) (Mar. 24, 2020) (defendant charged with bank fraud, not violent crime, released on consent); *United States v. Vizzari*, 19 Cr. 767(VSB) (Mar. 20, 2020) (defendant

---

[3] As the defense points out, neither Hobbs Act robbery conspiracy nor RICO conspiracy is a "crime of violence" under § 3142(f). (Mot. 7.) Accordingly, § 3143(a)(1) applies, not § 3143(a)(2). (*Id.*) However, as a consequence, the "exceptional reasons" provision of § 3145(c) is also inapplicable.

pled guilty to § 841(b)(1)(C) narcotics conspiracy, not violent crime, and was released on consent).[4]

The Government submits that in this case, given Crispin's gang membership, his violent history, his failure to comply with conditions of parole, the violent offenses of conviction, and the significant sentence that he faces, only the most stringent release conditions mirroring incarceration as closely as possible could sufficiently limit Crispin's danger to the public such that his unique health concerns would warrant his temporary release. Anything less and the balance—even in the face of Crispin's health concerns—falls decisively in favor of detention.

In particular, the Government seeks the following release conditions, to which the defense consents:

1. Home incarceration at a fixed address—meaning, lockdown at that address with no travel for any reason without prior permission from the Government and Pretrial Services.

2. Location monitoring by GPS bracelet.

3. A $150,000 bond co-signed by two persons, at least one of whom will live with the defendant and is willing to serve as a third-party custodian to ensure compliance with conditions 1 and 4 through 10.

4. Maintain a telephone at the residence such that the defendant can be reached at all times by Pretrial Services.

5. No visitors to the residence; only full-time residents or medical personnel permitted inside.

6. No use of the internet by the defendant, including social media or email accounts. This includes access through a third-party.

7. No telephone (including cellphone) usage by the defendant except to speak with Pretrial Services, medical professionals, or his attorneys.

8. No contact with witnesses, co-defendants, or known gang members, including through third-parties.

9. No possession of weapons or controlled substances by the defendant, except for prescription medications which are lawfully prescribed to him.

---

[4] The defense also cites decisions from the Eastern District of New York, all of which are distinguishable. (Mot. 9.) *First*, they were all pre-plea. *Second,* although some of these cases involved unlawful possession of a firearm, none involved an actual shooting and none involved gang-related charges. *Third*, in all but one these cases, release of the defendant to a shelter was on consent.

10. No weapons or controlled substances in the residence, except for prescription medications which are lawfully prescribed to a resident.

11. Surrender passports; no new applications.

12. All standard, mandatory conditions.

The defense's proposal that Crispin be released to the shelter system until these conditions can be satisfied should be rejected in light of the significant danger that Crispin poses both to the general public and to witnesses. Without a fixed address, there is no way to control with whom Crispin has contact. He can easily conduct gang business from a shelter where neither the Government nor Pretrial Services has the ability to monitor the persons who come and go. There is similarly no way to police Crispin's access to cellphones or the internet, increasing the risk that he will continue to engage in gang activity without detection. Nor can the Government ensure that he will not have access to weapons, including firearms. In addition, there will be no reliable, consistent way for Pretrial Services to make contact with Crispin and confirm his compliance with the conditions of release. GPS monitoring, without a fixed residence, is of limited value under these circumstances.

Weighed against these extreme public safety shortcomings is little to no health benefit from releasing Crispin to the shelter system:[5]

- If Crispin is accepted into a shelter, he will live in a facility with regular inflow and outflow of people. By contrast, he currently has a single cellmate, and the population at MCC is now static.

- Many shelters house persons in a dormitory setting. By contrast, Crispin currently only has contact with a single cellmate.

- It is not clear what COVID-19 screening procedures, if any, are actually being employed at shelters. We know that BOP is conducting regular temperature checks of inmates and staff, sending home staff members with fevers, and isolating inmates with fevers.

---

[5] For the proposition that a generic defendant is safer in a shelter than at MDC or MCC, the defense offers the affidavit of Dr. Jonathan Giftos. (Ex. B to Mot.) The affidavit demonstrates that Giftos has no personal knowledge of the actual, current conditions in the NYC shelter system or in the MCC. Moreover, the sole "benefit" of the shelter system that Giftos identifies is access to fresh air. (*Id.* ¶ 23.) It is not clear what medical benefit that supposedly provides in the context of COVID-19. And to the extent he suggests that "freedom of movement" somehow makes persons safer (*id.* ¶ 18), that is belied by the existing shelter-in-place order applicable to all New Yorkers. Finally, to the extent he suggests that inmates at MCC do not have access to hygiene products (*id.*), he is incorrect. Soap was delivered to all inmates the week of March 9, March 16, March 23, and March 30.

- It is also not clear what hospitalization procedures, if any, are actually being employed at shelters. By contrast, we know that BOP is bringing inmates to the hospital for a determination as to whether testing and treatment is necessary.

- Finally, Crispin's access to his cystic fibrosis medication is ensured at MCC. Defense counsel has articulated no plan for Crispin to obtain these medications if he is living in a shelter.

For all of these reasons, the defense proposal that Crispin be released without a fixed address should be rejected.

## IV. Conclusion

For the forgoing reasons, Crispin should be ordered detained unless and until he can comply with the conditions proposed herein by the Government.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

by: ___/s/_____
Celia V. Cohen
Assistant United States Attorney
(212) 637-2466